Sutliff, J.,
dissenting:
The original petition contains the averment “that upon the return day to .said attachment, issued by said justice, they moved to dismiss said attachment on the ground that *554 the affidavit upon which the attachment issued was false; and plaintiff offered to prove its falsity, but the justice refused to entertain said motion, ruling that justices of the peace had no jurisdiction to dismiss or discharge an attachment because of the falsity of the affidavit.”
It appears, therefore, by the record before us, that the plaintiffs were in court, and made an effort to get the attachment set aside, and failed. It may be conceded, for the purpose of fairly stating the question before us, that the justice erred in refusing to receive the proof offered, and in refusing to dismiss the attachment. Still, it must be admitted, that the plaintiffs below not only had an opportunity to come into court and procure the attachment to be dissolved, if improperly allowed, but they actually had their day in court, in that regard, and failed to procure the attachment to be dissolved; but judgment was rendered, and final order made in the case against the plaintiffs. Under these circumstances, it seems to me clear, that they were precluded in law from maintaining their action against the defendant for having wrongfully sued out the attachment.
I cannot perceive a want of analogy between the causes of action for maliciously commencing the suit without cause against a defendant, and for that of maliciously suing out an attachment against a defendant without cause. It is true, in this case, the plaintiffs admit a just cause for commencing the suit, and only deny that there was cause for suing out the attachment. But suppose the suit had been for both causes of action, that of commencing the suit without cause, and also that of suing out the attachment without cause. In such a case, we all agree, that by the plaintiffs appearing in court and suffering judgment to be entered against them in the proceeding, even if they had suffered such judgment by default, or had not come into court at all, having an opportunity to do so, they would very properly be precluded in law from maintaining their action for the alleged wrong of instituting *555 the suit against them without cause. Suppose, further, that in the civil suit the plaintiffs below had offered to prove to the court that the cause of action alleged against them was utterly groundless and fraudulent, and also had offered the same proof to dissolve the attachment upon the same motion, and suppose the justice to have refused to admit the proof of plaintiffs, either against the right of action or the right of attachment; it seems to me that in such a case there is no reason for holding the plaintiffs precluded in their right of action for instituting the suit against them, which does not equally obtain to preclude their right of action for suing out the attachment against them. If the suit were destitute of merits the defendants might appear and defeat the same. If the attachment was improperly sued out, they had the same right to appear and defeat the same, and procure its dismissal. But it is said they were not bound to move for the dismissal of the attachment. Nor were they bound to defend the suit commenced without cause and maliciously against them. The plaintiffs below might have been seriously injured by the commencement of a suit in the case supposed; perhaps as seriously injured as they could have been by an attachment being sued out. Suppose a case where a merchant, with a limited credit, and indispensably necessary to be preserved for his success in business, were sued for a large pretended debt for the purpose of destroying his credit. The very commencement of the suit might have ruined him in his business; yet we all agree no action could be maintained for the wrong unless the injured party could aver and show that such suit was terminated without a recovery. And I confess I can see no reason for not applying the same rule to cases of attachment. Wherever the party had an opportunity of defending against the alleged wrongful proceeding against him, I hold the law to be that he must aver and show the dismissal or termination of such legal proceedings, in his favor, as indispensably *556 necessary to entitle Mm to a recovery for such alleged wrongful proceedings against him.
Thus in the case of Whitworth v. Hall, 2 Barn. & Adolph. 680, it was held that in an action for maliciously suing out a commission of bankrupt it must be averred and proved, that the commission was superseded before the commencement of the action; and that if the fact be not proved, the plaintiff ought to be non-suited, though it was not averred in the declaration, although the declaration for such omission might have been demurred to. Lord Tenterden said in that case, in delivering the opinion: “If a commission of bankrupt be sued out without reasonable or probable cause, we must assume that the Lord Chancellor would supersede it. There is no sound distinction as to the point raised in this case between a malicious prosecution by indictment or a malicious arrest, and a suing out of a commission of bankrupt.” In the same case, Littledale, L, said: “ There is no distinction between an action for a malicious prosecution by indictment, or for a malicious arrest, and one for maliciously suing out a commission of bankrupt. In all of them it is necessary to show that the original proceeding, which formed the alleged ground of the action, is at an end.” Parke, J., used the following language: “It seems to be involved in the proposition that the commission was sued out without reasonable and probable cause, that such commission must be superseded before the action be commenced, for the very existence of the commission would be some evidence of probable cause.” So, too, in the case of Matthews v. Dickinson, 7 Taunt. 399, which was also an action for maliciously suing out a commission of bankrupt. Gibbs, C. J., in pronouncing the opinion of the court, used the following language: “ This was an action for maliciously suing out a commission of bankrupt. Unless it was superseded, the action could not be supported,” etc.
The statute of Geo. IV, c. 16, sec. 13, under which the commission of bankrupt, mentioned in the case of Whit- *557 worth v. Hall, was sued out, provided, as did the former statute, that if after such commission had been taken out, the petitioning' creditor failed to prove the truth of his alleged debts, and that the party had committed an ac.t of bankruptcy, at the time of the issuing of the commission, and that the commission was taken out fraudulently, upon petition of the party against whom the commission was sued out, the Lord Chancellor should examine into the same, and might order satisfaction to the party against whom' the commission had been so wrongfully sued out; and, to enable him to recover such satisfaction, might assign to him the bond given in the proceeding by the party suing out the commission. And such assignment of the bond by the Lord Chancellor was not only evidence of the commission being superseded, but that the commission had been fraudulently sued out. Smith v. Broomhead, 7 Term. 504; Ex parte Gayter, 1 Atk. 144.
It seems to me, therefore, there is an analogy between these cases and the one at bar. In the case of a commission of bankrupt being wrongfully sued out, if the party so suing it out failed to prove his debt and the act of bankruptcy, the Lord Chancellor would order the commission superseded, just as the court, in case of the party commencing a suit here in attachment, on failure of plaintiff, on trial, to prove his cause of action, would order the attachment dismissed. In like manner the person against whom the commission was wrongfully sued out, might himself, during the pendency of the proceedings, apply to the Lord Chancellor, and, upon showing proper cause, procure the commission to be superseded; just as the party, in this state, against whom an attachment has been wrongfully sued out, has the right to apply to the court, and, upon showing cause, procure the dismissal of the attachment. Secs. 228 and 229 of the code. Nor can I perceive why it is not equally involved in the proposition, that the order of attachment was sued out without any cause, that the same should have been dismissed, as in the cases referred *558 to, that the commission of bankrupt should have been superseded. The contrary doctrine would present this apparent absurdity: The party recovering for an order of attachment sued out without any cause, on farol proof, while the record to which he was party showed the continuance, in full force, of the judgment of the court in making the order, that there was sufficient cause for the order and the final order of sale, such order of attachment importing absolute verity, the same as a judgment.
I think the rule expressed in this case by the majority of the court, not only objectionable, as irreconcilable with authorities, but also as affording a prolific source of litigation, tending, necessarily, in a great measure, to defeat the object, and pervert the benefits of the attachment laws of this state.
Eor the reasons stated, I am unable to concur with my brethren in their opinion pronounced in this case.